**Affirmed and Memorandum Opinion filed July 1, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00546-CV

---

### MARY E. GONZALES, Appellant

### V.

### MAIN STREET ACQUISITION CORP., Appellee

---

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 1017338**

---

## M E M O R A N D U M   O P I N I O N

Appellant Mary E. Gonzales urges that the trial court erred in entering judgment in favor of Main Street Acquisition Corp. on this assigned credit card debt action. In a single issue, Gonzales argues that there is no evidence to support the damage award of $3,022.97. We affirm.

# I. BACKGROUND

Gonzales obtained a credit card with HSBC Bank Nevada N.A. in 2005. HSBC assigned the account to Main Street. Main Street filed this sworn suit for breach of contract and account stated. Gonzales filed a verified denial. Main Street also served Gonzales with requests for admissions, to which Gonzales responded.

The parties tried their dispute to the court without a jury. On May 22, 2013, the trial court signed a judgment for Main Street and awarded $3,022.97 in actual damages and $1,007.66 in attorney's fees. This appeal followed.

# II. ANALYSIS

## Applicable Law

When we review the factual and legal sufficiency of the evidence following a bench trial, we apply the same standards as jury trials; that is, we view the evidence in the light most favorable to any challenged finding and indulge all reasonable inferences in support of the finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

A party is entitled to relief under the common law cause of action for account stated when (1) transactions between the parties give rise to indebtedness of one to the other; (2) an agreement, express or implied, between the parties fixes an amount due; and (3) the one to be charged makes a promise, express or implied, to pay the indebtedness. *Busch v. Hudson & Keyse, LLC*, 312 S.W.3d 294, 298 (Tex. App.—Houston [14th Dist.] 2010, no pet.). An agreement to the amount owed can be implied from proof that account statements were sent to the defendant, the defendant made charges and payments on the account, fees and interest were assessed on the account, and the defendant retained credit card

2

statements reflecting the fees and charges on the account without disputing them. *Citibank (S.D.), N.A. v. Durden*, No. 05-11-00154-CV, 2012 WL 6096569, at *2 (Tex. App.—Dallas Dec. 7, 2012, no pet.).

***The Evidence***

To meet its burden at trial, Main Street relied upon two exhibits, both admitted without objection: the admissions from Gonzales; and a business records affidavit of Scott Loynd, Main Street's designated agent, along with documents attached thereto. Neither party provided testimony about the amount owing on the account.

First, Gonzales' responses to Main Street's requests for admissions established the following:

1. Gonzales applied for the credit card.

2. At Gonzalez request, the account was opened.

3. Gonzales understood from the time the account was opened that (a) use of the credit card results in a loan being made to Gonzales for the amount charged or cash advance requested and (b) Gonzales is required to repay all charges or cash advances incurred on the account.

4. Gonzales fully understood the risk and obligations associated with the credit card accounts.

5. Gonzales "made the purchases and took cash advances using the credit card made a basis of Plaintiff's Original Petition."

6. Main Street is the present owner and hold of the subject account.

7. Since Gonzales opened the account, she has not notified Main Street of any dispute or error regarding any information contained in any monthly statement and, prior to Main Street filing the lawsuit, Gonzales never requested verification of the debt from Main Street or disputed the debt owing on the subject account.

8. Main Street requested and made a written demand upon Gonzales that she pay for the subject account.

9. Gonzales has failed to pay Main Street for the subject account.

10. Gonzales last payment on the account was on or about June 30, 2009.

Second, in his affidavit, Scott Loynd averred, *inter alia*, that:

The records attached hereto are the original or the exact duplicates of the original records and documents maintained by MAIN STREET ACQUISITION CORP. pertaining to account number 5491100007831434 the account of MARY E GONZALES [S.S. No. omitted] which was the name carried in our books and records. Per the Plaintiff's Original Petition, there is a balance owing on said account of $3,022.97 as of February 27, 2010, after giving credit for all payments and credits.

Pertaining to the amount owing, the documentary evidence attached to Loynd's affidavit shows the following statements of account directed to Mary E. Gonzales, with the specified amounts due and payable to HSBC:

(a) February 7, 2010 statement from Household Bank Platinum:
"Previous Balance"    $ 2,946.22
"Finance Charge"       $ 74.75
"New Balance"          $ 3,022.97

(b) January 7, 2010 statement from Household Bank Platinum:
"Previous Balance"     $2,840.99

"Purchases/Debits"    $ 35.00[1]

"Finance Charge"    $ 72.73

"New Balance"    $ 2,948.22

(c)  December 7, 2009 statement from Household Bank Platinum:

"Previous Balance"    $ 2,740.89

"Purchases/Debits"    $ 35.00

"Finance Charge"    $ 65.10

"New Balance"    $ 2,840.99

(d)  November 8, 2009 statement from Household Bank Platinum:

"Previous Balance"    $ 2,636.66,

"Purchases/Debits"    $ 35.00

"Finance Charge"    $ 69.23

"New Balance"    $ 2,740.89

(e)  October 7, 2009 statement from Household Bank Platinum:

"Previous Balance"    $ 2,539.21

"Purchases/Debits"    $ 35.00

"Finance Charge"    $ 62.45

"New Balance"    $ 2,636.66

(f)  September 7, 2009 statement from Household Bank Platinum:

"Previous Balance"    $ 2,442.09

"Purchases/Debits"    $ 35.00

"Finance Charge"    $ 62.12

"New Balance"    $ 2,539.21

(g)  August 7, 2009 statement from Household Bank Platinum:

"Previous Balance"    $ 2,347.35

"Purchases/Debits"    $ 35.00

---

[1] "Purchases/Debits" of $35.00 for periods June, August, September, and October 2009 are itemized as "Late Charge Assessments." "Purchases/Debits" of $35.00 for periods January 2010, December 2009, and November 2009 are listed as "Overlimit Charge Assessments." The credit limit stated on all account statements is $2,600.

"Finance Charge"      $ 59.74

"New Balance"      $ 2,442.09

(h)  July 7, 2009 statement from Household Bank Platinum:

"Previous Balance"      $ 2,451.52

"Payments/Credits"      $ 157.00

"Finance Charge"      $ 52.83

"New Balance"      $ 2,347.35

(i)  June 7, 2009 statement from Household Bank Platinum:

"Previous Balance"      $ 2,361.60

"Purchases/Debits"      $ 35.00

"Finance Charge"      $ 54.92

"New Balance"      $ 2,451.52

(j)  May 7, 2009 statement from Household Bank Platinum:

"Previous Balance"      $ 2,386.49

"Payments/Credits"      $ 78.00

"Finance Charge"      $ 53.11

"New Balance"      $ 2,361.60

(k)  April 7, 2009 statement from Household Bank Platinum:

"Previous Balance"      $ 2,407.99

"Payments/Credits"      $ 75.00

"Finance Charge"      $ 53.50

"New Balance"      $ 2,386.49

(l)  March 8, 2009 statement from Household Bank Platinum:

"Previous Balance"      $ 2,441.11

"Payments/Credits"      $ 83.00

"Finance Charge"      $ 49.88

"New Balance"      $ 2,407.99

Gonzales nonetheless argues that the $3,022.97 damages award is unsupported by credit card statements during the time that Gonzales actually used

the credit. Stated differently, Gonzales urges that Main Street's burden was to bring credit card statements from the inception of the account in 2005 to show how the balance was accumulated. Gonzales does not cite and we do not find any authority for holding Main Street to such a burden.

The trial court examined evidence of twelve months of credit card statements addressed to Gonzales. There is no evidence to suggest the statements were not received by Gonzales. The statements culminate in February 2010, in a total amount of $3,022.97, the sum awarded by the trial court. The trial court also examined the affidavit from Scott Loynd, in which he averred, from stated personal knowledge, that the balance owing on the account through February 27, 2010 is $3,022.97. Finally, the trial court received Gonzales' admissions that she opened the subject account, understood that she was agreeing to repay sums charged or advanced, and that she "made the purchases and took cash advances using the credit card made the basis of Plaintiff's Original Petition." Gonzales also admitted that Main Street now owns the account, and, despite written notice of the sums owing, she has neither paid nor disputed the account as reflected in any monthly statement.

Gonzales, herself, provided no evidence or testimony about the subject account.[2] The amount of the debt is thus established by numerous credit card statements, the last of which shows the balance due and owing. *See Nguyen v. Citibank N.A.*, 403 S.W.3d 927, 932 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding that Citibank's affidavit from a custodian of records authenticating numerous billing statements and averring that a balance of

---

[2] The trial court precluded Gonzales from offering any evidence about payments made as Gonzales did not plead a "payment" affirmative defense. Tex. R. Civ. P. 94. Gonzales does not appeal this evidentiary ruling.

$24,867.81 was due and owing was uncontroverted and, thus, sufficient evidence for summary judgment).

Viewing this evidence in the light most favorable to the trial court's judgment, we hold that the evidence is legally and factually sufficient to support the trial court's award of $3,022.97. We overrule Gonzales sole issue on appeal and, therefore, affirm the judgment.

/s/    Sharon McCally
Justice

Panel consists of Justices Christopher, Jamison, and McCally.